UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**KEITH L. WILDER**                                                                                          **PLAINTIFF**

**V.**                           **NO. 4:16-CV-00204 BSM/JTR**

**NANCY A. BERRYHILL,[1]**
**Acting Commissioner,**
**Social Security Administration**                                                              **DEFENDANT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I.  Introduction**:

Plaintiff, Keith L. Wilder, applied for disability benefits on October 29, 2012, alleging a disability onset date of December 31, 2007. (Tr. at 11). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 20). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now

---

[1]Berryhill is now the Acting Commissioner of Social Security and is automatically substituted as Defendant pursuant to Fed. R. Civ. P. 25(d).

stands as the final decision of the Commissioner. Wilder has requested judicial review.

For the reasons stated below, the Commissioner's decision should be affirmed.[2]

## II. **The Commissioner's Decision:**

The ALJ found that Wilder had not engaged in substantial gainful activity since the alleged onset date of December 31, 2007. (Tr. at 13). At Step Two, the ALJ found that Wilder has one severe impairment: seizure disorder. *Id*.

After finding that Wilder's impairment did not meet or equal a listed impairment (Tr. at 14), the ALJ determined that Wilder had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels except, to account for his seizure disorder, he must avoid working at unprotected heights and operating dangerous machinery, and he must take other seizure precautions to prevent

---

[2] Wilder appears *pro se* in this matter. As a threshold matter, the Commissioner argues that Wilder's Complaint should be dismissed for failure to prosecute. After Wilder filed his Complaint and the Commissioner filed her Answer, the Court issued a scheduling order directing Wilder to file his appeal brief by September 16, 2016. *Doc. 13*. Wilder missed this deadline, and on October 4, 2016, the Court issued a show cause order directing Wilder to provide, by November 7, 2016, an explanation for why the case should not be dismissed. *Doc. 15*. Wilder failed to meet this deadline, and the Court issued another order directing Wilder to file an appeal brief by December 12, 2016. *Doc. 16*. Wilder filed his appeal brief on December 7, 2016. *Doc. 17*.

The Commissioner argues that Wilder's failure to comply with two of the Court's orders and his failure to provide a statement of facts, make legal arguments, or cite to legal authority in his brief, justifies the Court dismissing his Complaint. *Doc. 21 at 4*. As a *pro se* litigant, Wilder should be allowed more latitude in complying with the rules and deadlines even when they are contained in Court orders. Accordingly, the Court rejects the Commissioner's argument that dismissal of Wilder's Complaint is the appropriate sanction for his failure to comply with the filing deadlines imposed by the Court.

harming himself or others. *Id.*

The ALJ found that Wilder had no past relevant work. (Tr. at 19). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Wilder's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform at all exertional levels, specifically, linen room attendant and bench operator/marking clerk. (Tr. at 20). Consequently, the ALJ found that Wilder was not disabled. *Id.*

### III.   Discussion:

A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.  Wilder's Arguments on Appeal

Wilder did not make specific arguments in his appeal brief and subsequent notice. *Docs. 17 & 18*. He simply stated that seizures cause him to be unable to work, and he attached to his filings medical records documenting medical treatment he received *before* and *after* the relevant period. Construing Wilder's argument as broadly and favorably to him as possible, the Court will presume that he is asserting that the ALJ's decision is not supported by substantial evidence. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

During the administrative hearing, Wilder asserted that, other than seizures, his health is "perfect." (Tr. at 33). He also denied any mental health treatment or medication, and appeared unwilling to submit to treatment. (Tr. at 419). Given those facts, as freely admitted by Wilder, the ALJ did not find mental illness to be a severe impairment. (Tr. at 13).  Thus, the Court will review the medical evidence related to the seizure disorder only.

Wilder went to the Baptist Health Medical Center Emergency Room on August 5, 2007, after he had a moderate grand-mal seizure. (Tr. at 251). A CT scan showed a brain tumor (stable mixed solid and cystic mass), which was unchanged compared to a January 2007 CT scan, with no other abnormalities. (Tr. at 270). A neurological exam was normal. (Tr. at 252, 253). Wilder was diagnosed with a seizure disorder, given a prescription for Dilantin, and discharged the same day. (Tr. at 266).

While incarcerated in the Arkansas Department of Correction ("ADC"), on December 18, 2007, Wilder had a seizure, but the APN (Advanced Practice Nurse) noted that he was in good physical condition. (Tr. at 295). She restricted him to work assignments "where sudden loss of consciousness would be dangerous to himself or others such as scaffolding, driving a vehicle, or moving machinery." *Id.* A December 29, 2007 ADC Health Services encounter note revealed a seizure disorder and indicated that Wilder was taking Dilantin. (Tr. at 310). On May 18, 2008, Wilder reported to the Health Services Unit that his last seizure was two years ago. (Tr. at 309). On October 2, 2008, Wilder's Dilantin level was subtherapeutic, and it was low again on June 5, 2009 and December 20, 2010, indicating that he was not taking the Dilantin as prescribed. (Tr. at 332, 342, 248). A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). Still, on August 31, 2009, a Health Services Unit note

revealed no seizures. (Tr. at 327).

At an October 25, 2010 appointment with the Health Services Unit, Wilder reported that he could not remember the last time he had a seizure, and he denied seizures at a December 20, 2010 appointment. (Tr. at 350, 348). On June 15, 2011, Wilder told the Health Services provider that he had not had a seizure in three years. (Tr. at 246). On October 12, 2011, Wilder reported no seizures to Kathy L. Woods, NP (Nurse Practitioner). (Tr. at 450). Over the three-year period from 2008 to 2011, Wilder's neurological examinations were normal, with normal gait, muscle tone, and muscle strength. Objective medical testing that shows only mild to moderate conditions does not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).

The only evidence of further seizures is as follows: (1) in March of 2012, Wilder had two blackouts at an alcohol treatment facility (Tr. at 445); and (2) in March and April of 2013, he had two other seizures. (Tr. at 438, 440). Again, neurological exams were normal, and he appeared in no acute distress during appointments with Nurse Woods. On May 22, 2013, Wilder reported to Nurse Woods that he needed her to fill out disability paperwork regarding his seizures. (Tr. at 514). She said that disability paperwork must be completed by a medical doctor and not a nurse practitioner. *Id.*

Two non-examining reviewing physicians concluded, based on their review of Wilder's medical records, that he could work provided he took seizure precautions. (Tr. at 57, 90). Bruce Randolph, M.D., performed a consultative examination, on March 13, 2013, and found normal mental status, normal limb function, normal gait, and normal neurological function. (Tr. at 431). Dr. Randolph noted a history of seizures and found severe limitation in any safety sensitive activities, like driving a vehicle, operating heavy machinery, or working at unprotected heights. (Tr. at 432).

On April 10, 2013, Mike Parker, Ph.D, conducted a mental diagnostic evaluation. He found Wilder to be dishonest about his history of drug abuse, and indicated past non-compliance with treatment. (Tr. at 419, 420). A claimant's non-compliance with treatment is a legitimate consideration in evaluating the validity of his alleged disability. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001). While Wilder alleged mental impairments, he admitted he never pursued psychiatric treatment, and Dr. Parker noted that Wilder communicated well and had good concentration. (Tr. at 419, 424). He found that Wilder was able to complete basic and complex activities of daily living without difficulty, and did not think intellectual issues would preclude employment. (Tr. at 424). Dr. Parker did not place any functional restrictions on Wilder.

The ALJ properly considered and weighed the evidence in the record as a whole

to determine Wilder's RFC. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010); *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

Although Wilder had a history of seizures, he went years without seizures, suggesting that Dilantin helped control his condition, when he was taking it. His neurological examinations were unremarkable over the relevant time period, and a CT scan of the brain was grossly normal. He went to the hospital one time in 2007, and he did not require further hospitalization. In Wilder's own words, he was "perfect" except for seizures. (Tr. at 33). He did not require more than conservative treatment with Dilantin.

Dr. Parker and the two reviewing physicians assigned seizure precautions to Wilder, and the ALJ properly relied upon those restrictions to determine Wilder's RFC. Only Nurse Woods provided Wilder's treatment after he was released from prison, and she admitted that only a medical doctor could provide an opinion on Wilder's medical condition and limitations. Indeed, Nurse Woods is not an acceptable

8

medical source. *See* 20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5); *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (evaluating therapist's assessment as "other medical evidence" rather than as a treating source opinion). Thus, the Court concludes that the ALJ properly relied upon consistent medical evidence and opinions, as well as Wilder's own testimony, in determining his RFC, which is strongly supported by the record as a whole.

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision that Wilder was not disabled. The ALJ correctly determined Wilder's RFC and did not err in his decision to deny benefits.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that the case be DISMISSED, with prejudice.

DATED this 17th day of February, 2017.

_____
UNITED STATES MAGISTRATE JUDGE